IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff,*<br><br>v.<br><br>37.158 ACRES OF LAND, MORE OR LESS, SITUATE IN HIDALGO COUNTY, STATE OF TEXAS; AND HIDALGO AND CAMERON COUNTIES WATER CONTROL AND IMPROVEMENT DISTRICT NO. 9, *et al.*,<br>    *Defendants*. | § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 7:20-cv-00025 |

## JOINT DISCOVERY/CASE MANAGEMENT PLAN UNDER FRCP 26(f)

**1.    State when and in what manner the parties conferred as required by Rule 26(f), and identify the counsel and/or parties who participated in the conference.**

Pursuant to Federal Rule of Civil Procedure 26(f), Baltazar Salazar, Assistant United States Attorney on behalf of Plaintiff, the United States of America ("United States"), conferred via telephone with Lance Kirby and Gregory Kerr, counsel for Defendant Hidalgo and Cameron Counties Water Control and Improvement District No. 9 ("Defendant") on February 14 and 19, 2020.

**2.     List by case number and court any cases related to this one that are pending in any state or federal court and describe how they are related.**

None at this time.

**3.     Briefly describe what this case is about.**

This is a civil action brought by the United States under the power of eminent domain through a Declaration of Taking at the request of the Secretary of the Department of Homeland Security, through the Acquisition Program Manager, Wall Program Management Office, U.S. Border Patrol Program Management Office Directorate, U.S. Border Patrol, U.S. Customs and Border Protection, Department of Homeland Security, for the taking of property for purposes of constructing, installing, operating, and maintaining roads, fencing, vehicle barriers, security lighting, cameras, sensors, and related structures to help secure the United States/Mexico border within the State of Texas; and for the determination and award of just compensation to the owners and parties in interest.

**4.     Specify the allegation of federal jurisdiction.**

The United States alleges the Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. §1358.

**5.   Name the parties who disagree with the jurisdictional allegations and state their reasons.**

None.

**6.   List anticipated additional parties that should be included, when they can be added, and by which parties desires their inclusion.**

None.

**7.   List anticipated interventions.**

None at this time.

**8.   Describe any class-action issues.**

None.

**9.   State whether each party represents that it has made the initial disclosures required by FRCP 26(a). If not, describe the arrangements that have been made to complete such disclosures.**

The United States will provide initial disclosures pursuant to Rule 26(a)(1)(A) by March 2, 2020.

Defendant will provide initial disclosures pursuant to Rule 26(a)(1)(A) by March 23, 2020.

**10.   Describe the discovery plan proposed by the parties, including:**

   **A.   What changes should be made in the timing, form or requirement for disclosures under Rule 26(a)?**

   None.

   **B.   When and to whom the plaintiff anticipates it may send interrogatories?**

   The United States anticipates sending interrogatories to Defendant within 15 days after the entry of the Court's scheduling order.

   **C.   When and to whom the defendant anticipates it may send interrogatories?**

   Defendant anticipates sending interrogatories to the United States on or before March 23, 2020.

   **D.   Of whom and by when the plaintiff anticipates taking oral depositions?**

   The United States anticipates taking the deposition of Defendant's representative(s) and fact witness(es) in this action prior to the end of the discovery period as designated by the Court.

    **E.**    **Of whom and by when the defendant anticipates taking oral depositions?**

Defendant anticipates taking the deposition of any persons with knowledge of relevant facts or persons identified in Plaintiff's disclosures. Defendant also intends to depose agents of Plaintiff and its designated representatives. Defendant anticipates that these depositions will likely be scheduled after the parties have exchanged and responded to written discovery and will be completed by the discovery deadline set by this Court.

    **F.**    **When the plaintiff (or the party with the burden of proof on an issue) will be able to designate experts and provide the reports required by Rule 26(a)(2)(B), and when the opposing party will be able to designate responsive experts and provide their reports?**

Defendant has the burden of proof regarding the issue of just compensation in this action. The United States is not opposed to designating experts and providing reports required under Rule 26(a)(2)(B) on the same date as Defendant. The United States and Defendant agree to designate experts and provide reports no later than September 18, 2020. The United States asks that the Court consider a deadline for rebuttal experts as well.

The parties anticipate they will provide expert reports by October 18, 2020.

    **G.**    **List expert depositions the plaintiff (or the party with the burden of proof on an issue) anticipates taking and their anticipated completion date. See Rule 26(a)(2)(B) (expert report)?**

Defendant has the burden of proof regarding the issue of just compensation in this action. Defendant intends to depose any experts designated by the United States and will endeavor to do so within 60 days of the designation and provision of reports regarding such expert(s).

    **H. List expert depositions the opposing party anticipates taking and their anticipated completion date. See Rule 26(a)(2)(B) (expert report)?**

The United States anticipates taking the deposition of any expert designated by Defendant by the end of the discovery period as designated by the Court in its scheduling order.

**11.**    **If the parties are not agreed on a part of the discovery plan, describe the separate views and proposals of each party.**

The parties agree on all parts of the discovery plan.

**12.**    **Specify the discovery beyond initial disclosures that has been undertaken to date.**

The Parties have met several times to discuss access and maintenance issues, including fence design plans.

**13.**    **State the date the planned discovery can reasonably be completed.**

If the Court grants discovery, the Parties anticipate that discovery can be reasonably completed by December 18, 2020.

**14. Describe the possibilities for a prompt settlement or resolution of the case that were discussed in your Rule 26(f) meeting.**

The parties continue to engage in settlement negotiations, but have not been able to determine or agree on appropriate compensation for the taking. Defendant contends that it is due in part to a lack of information needed from the United States to prepare a counter-offer to the just compensation deposited in this case. The parties are hopeful a settlement can be reached prior to the time of trial.

**15. Describe what each party has done or agreed to do to bring about a prompt resolution.**

Prior to filing suit, on or about May 23, 2019, Realty Specialists from the United States Army Corps of Engineers (USACE) and project engineers met with Defendant's representatives to address their concerns regarding the border infrastructure design impacts on Defendant's facilities. In particular, Defendant owns a levee and other infrastructure that are situated within Tracts RGV-WSL 8000, 8000-2, and 8006—the property the United States seeks to acquire in this case; Defendant utilizes said levee and infrastructure for the operation of its water reservoir. At the meeting, Defendant's representatives were shown 30% design documents, and were shown how the border infrastructure will aid in securing the border. A subsequent meeting between the United States and Defendant was planned to address Defendant's questions about gate locations and maintenance issues.

On or about June 14, 2019, USACE Realty Specialists, Customs and Border Protection (CBP) representatives, and Defendant's counsel and representatives met at Defendant's place of business. At said meeting, USACE delivered an Offer to Sell (OTS) to Defendant for consideration of selling Tracts RGV-WSL-8000, 8000-2, and 8006 to the United States. USACE agreed to provide Defendant's counsel with comparable sales that were utilized in the appraisal of the property. CBP's representative presented Defendant's representatives with the plans for construction access, the smart wall design, and explained gate access to them. Defendant's general manager raised concerns regarding maintenance responsibilities of facilities because the wall placement would affect the canals, basin, bridges, and roads Defendant utilizes in connection with the operation of its water reservoir; he also raised concerns with possible seepage issues related to the wall design. A follow-up meeting was then planned between the United States and Defendant to review the updated 65% design documents, to discuss maintenance and seepage issues, and to discuss Defendant's counter-offer.

On June 27, 2019, Defendant's counsel emailed the USACE Realty Specialist responsible for negotiating the purchase of Defendant's tracts, and concluded that a counter-offer could not be considered at the time because many variables remained unknown that could impact the valuation and the structural integrity of Defendant's water reservoir. The main issue Defendant raised revolved around the future operation and maintenance of the levee because Defendant recognized that its interest in the levee will be extinguished by the United States' acquisition of the tracts; Defendant expressed that its right to use said property/levee would be protected in a 3-party Memorandum of Agreement between CBP, Defendant, and the International Boundary and Water Commission, United States and Mexico, United States Section (IBWC)—which would establish maintenance responsibilities of each party. Defendant's counsel was hopeful that an updated engineering information and a maintenance MOA would impact their valuation of the tracts to support a counter-offer from Defendant.

On July 19, 2019, a CBP representative spoke with Defendant's general manager about design updates and followed up with him via email on July 29 and requested dredge data on the inlet from Defendant.

On August 5, 2019, a USACE Realty Specialist attempted to contact Defendant's general manager to discuss the OTS. On August 7, the USACE Realty Specialist spoke with Defendant's general manager to request a meeting to discuss OTS and relocation fees of a storage building owned by Defendant, situated within the tracts the United States seeks to acquire. However, Defendant's general manager stated that a discussion of compensation/moving expenses would not be productive because Defendant was more concerned with the design of the border infrastructure and with the implementation of a maintenance MOA. The USACE Realty Specialist informed Defendant's general manager that she would request that CBP schedule a meeting to provide any updates to the design, and attempt to combine her meeting with CBP. A meeting was then scheduled for August 7.

On August 7, 2019, USACE Realty Specialists, CBP representatives, and Defendant's representative met at Defendant's place of business. CBP presented Defendant's representatives updated 65% design plans for their examination. Defendant's general manager raised concerns with the hydrology and the capabilities of the border wall to withstand pressure from Defendant's basin. CBP promised to follow-up on the general manager's inquiry. The project manager informed Defendant's representatives that CBP was working on a draft MOA and would update them on the status. USACE Realty Specialists then discussed relocation benefits and requested a counter-offer from Defendant.

From August 8 to August 15, 2019, a USACE Realty Specialist requested a counter-offer from Defendant, and provided Defendant's representatives with a response to their question of how the wall would withstand the pressure of Defendant's retention basin. However, Defendant preferred that it be provided true calculations, as well as information regarding drainage, and possible water leakage from the reservoir. Defendant's counsel informed the Realty Specialist that Defendant could not come up with an amount for their counter-offer until Defendant received more engineering data regarding the potential border wall.

On August 21, 2019, CBP representatives, a project manager, and Defendant's representatives met at Defendant's place of business to discuss the wall design, the canal bridge design, and dredging operations. CBP presented Defendant with the designs and addressed issues regarding the weeping of the basins and the wall design's ability to withstand the weeping; addressed issues regarding seepage and stability analysis; addressed dredging capabilities regarding the bridge CBP intends to construct within the tracts. CBP requested a list from Defendant regarding the equipment it intends to use when crossing the culvert.

On October 8, 2019, DOJ met with Defendant's counsel and general manager at Defendant's place of business. Defendant's counsel informed DOJ that Defendant had not considered a counter-offer to the OTS because issues regarding maintenance of the levee and the status of the pending maintenance MOA was unknown to them. Defendant's general manager presented concerns as to the structural capabilities of the proposed border wall structure, CBP's proposed canal bridge, and Defendant's inability to maintain, repair, or operate Defendant's property unless these rights are provided for in a maintenance MOA. DOJ informed Defendant it would check on the status of the maintenance MOA and would invite the project manager to a follow-up meeting later in October to address further concerns Defendant's general manager had with the proposed border

infrastructure.

On October 10, 2019, USACE requested that tract RGV-WSL-8007, also owned by Defendant, be included in the pending negotiations of tracts RGV-WSL-8000, 8000-2, and 8006.

On October 22, 2019, DOJ emailed a draft copy of a maintenance MOA to Defendant's counsel between CBP, IBWC, and Defendant; the following day, DOJ, a project manager, Defendant's counsel and Defendant's representatives met at Defendant's place of business. Defendant's counsel addressed issues with respect to Defendant's maintenance obligations under the draft MOA, as well as notable issues with CBP and IBWC's responsibilities. Defendant's main concern was that the effect and duration of the MOA was not perpetual or protected, but rather a party could terminate the MOA by providing 60 day advanced notice to the other two parties. Defendant's counsel explained that a party's ability to easily terminate the MOA would place Defendant in a vulnerable position as to its dependence on the levee, and its maintenance of the canal and Defendant's infrastructure. The project manager presented that the 65% design remained as the current design in place; he addressed issues related to the proposed canal bridge's capabilities and maintenance regarding the bridge along Defendant's canal; and other questions regarding dredging operations and status of the final design. Defendant's counsel said he and Defendant would provide edits to the MOA to DOJ for CBP and IBWC to consider, and Defendant would present DOJ with a counter-offer soon.

Since reviewing the 65% design plans, Defendant has consistently requested the 100% plans to ensure that Defendant is fully assured as to what engineering concerns it may need to consider and address in its evaluation of the damages it will incur. Defendant has consistently explained that while the MOA provides significant protections to Defendant in allowing it to maintain its reservoir system, the extent of the expanded maintenance requirements is dependent upon the actual design and construction of the CBP's facilities.

On November 12, 2019, DOJ presented Defendant's counsel with an updated OTS, which incorporated tract RGV-WSL-8007, for Defendant to consider. DOJ requested a counter-offer on or before November 19, 2019, otherwise the tracts would be referred for condemnation.

From October 29 to November 14, 2019, DOJ requested Defendant's proposed edits/comments to the maintenance MOA to move forward with negotiations of the tracts. On November 14, DOJ received and reviewed Defendant's edits/comments to the maintenance MOA and sent the document to CBP and IBWC for consideration. Defendant's counsel informed DOJ that it would be presenting DOJ with a counter-offer which would be based on Defendant's "worst case scenario" of not having the maintenance MOA in place or of having the MOA expire sometime in the future; in other words, the counter-offer would factor that Defendant would not have any rights to depend as to the utilization of the levee as part of its reservoir system and may need to reconstruct its own levee at some point.

On November 25, 2019, DOJ received Defendant's counter-offer, which substantially exceeded the compensation offered in the updated OTS for the purchase of the tracts. Defendant's counsel stated that the counter-offer's calculations were based on the Defendant's damages after the sale and considering its rights and obligations in the future with respect to the levee and maintenance of Defendant's facilities. Defendant's counsel noted that the maintenance MOA would significantly impact its analysis of damages.

CBP accepted Defendant's request that the MOA remain in effect unless terminated, in writing,

by the agreement of CBP, Defendant, and IBWC; thus, on November 26, 2019, DOJ emailed Defendant's counsel an updated draft of the MOA, in which CBP incorporated most of Defendant's edits/comment as to the MOA's terms. DOJ informed Defendant's counsel that although IBWC was still reviewing the draft, CBP had no changes to make to the current draft. Since November 26, DOJ has requested an updated counter-offer on multiple occasions from Defendant but has yet to receive one. Accordingly, the United States filed its Complaint in Condemnation (Doc. 1) and Declaration of Taking (Doc. 2) January 27, 2020.

On January 21, 2020, DOJ emailed Defendant's counsel a proposed final draft of the maintenance MOA. On February 12, 2020—after the commencement of this action—DOJ, CBP, IBWC, and Defendant' counsel and general manager held a telephonic conference to finalize the terms of the 3 party maintenance MOA. Currently, the maintenance MOA is being circulated for signatures of the parties involved. Since the final executed MOA has not been delivered as of this date and the final engineering plans have not been provided to Defendant, Defendant has not submitted a counter-proposal. Defendant has informed the United States that it will oppose possession until it has received the fully executed MOA and the 100% engineering plans. Defendant has consistently explained that it cannot consider a settlement proposal until it is known exactly what is going to be constructed as the border infrastructure on Tracts WSL-8000, 8000-2, 8006, and 8007 so that the Defendant's engineers can assess the impacts on its reservoir.

**16.    From the attorneys' discussion with the client, state the alternative dispute resolution techniques that are reasonably suitable, and state when such a technique may be effectively used in this case.**

The United States does not believe that formal alternative dispute resolution is applicable or needed in this case; however, the United States will continue negotiations with Defendant with hopes to settle this case.

Defendant believes that formal alternative dispute resolution would be useful once the United States has provided the information necessary for Defendant to analyze the effects of the United States' taking and construction. However, until the United States is able to provide that information and Defendant is given an opportunity to review and analyze it, Defendant cannot reasonably negotiate or provide a counter offer.

**17.    Magistrate judges may now hear jury and non−jury trials. Indicate the parties' joint position on a trial before a magistrate judge.**

The parties do not agree to a trial before a magistrate judge.

**18.    State whether a jury demand has been made and if it was made on time.**

The United States makes no demand for a jury trial.

Defendant will demand a jury trial.

**19.    Specify the number of hours it will take to present the evidence in this case.**

The parties agree that the evidence in this case could be presented in 16 hours or less.

**20.    List pending motions that could be ruled on at the initial pretrial and scheduling conference.**

None at this time.

**21.    List other motions pending.**

None.

**22.    Indicate other matters peculiar to this case, including discovery that deserve the special attention of the court at the conference.**

There is a possibility that rebuttal experts may be needed in this case. The Parties request that the Court set a rebuttal expert deadline for forty-five (45) days after date of the mutual expert report exchange.

**23.    Certify that all parties have filed Disclosure of Interested Parties as directed in the Order for Conference and Disclosure of Interested Parties, listing the date of filing for the original and any amendments.**

The United States filed a Disclosure of Interested Parties with the Court on February 21, 2020.

Defendant filed its Disclosure of Interested Parties with the Court on February 24, 2020.

**24.    List the names, bar numbers, addresses, and telephone numbers of all counsel.**


**COUNSEL FOR PLAINTIFF:**

**BALTAZAR SALAZAR**
**Assistant United States Attorney**
**S.D. Tex. ID No. 3135288**
**Texas Bar No. 24106385**
**600 E. Harrison Street, Suite 201**
**Brownsville, TX 78520**
**Telephone:  (956) 983-6057**
**Facsimile:  (956) 548-2775**
**E-mail:  Baltazar.Salazar@usdoj.gov**
**Attorney-in-Charge for Plaintiff**

**COUNSEL FOR DEFENDANT:**

**LANCE A. KIRBY**
**S.D. Tex. ID No. 21811**
**Texas Bar No. 00794096**
**Email: lakirby@jgkl.com**
**Attorney-in-Charge for Defendant**
**GREGORY P. KERR**
**S.D. Tex. ID No. 2248227**
**Texas Bar No. 24078781**
**E-mail:  gkerr@jgkl.com**
**JONES, GALLIGAN, KEY & LOZANO, L.L.P.**

**2300 West Pike Blvd., Suite 300**
**Weslaco, Texas 78596**
**Telephone: (956) 968-5402**
**Facsimile (956) 969-9402**

                                              Respectfully submitted,

                                              **RYAN K. PATRICK**
                                              United States Attorney
                                              Southern District of Texas

By:   *s/ Baltazar Salazar*
            **Baltazar Salazar**
            Assistant United States Attorney
            Attorney-in-Charge
            S.D. Tex. ID. No. 3135288
            Texas Bar No. 24106385
            **UNITED STATES ATTORNEY'S OFFICE**
            **SOUTHERN DISTRICT OF TEXAS**
            600 E. Harrison, Suite 201
            Brownsville, Texas 78520
            Telephone: (956) 983-5067
            Facsimile: (956) 548-2775
            Email: Baltazar.Salazar@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on February 24, 2020, a copy of the foregoing document was served to Defendant via CM/ECF notice of electronic filing.

                                              *s/ Baltazar Salazar*
                                              **Baltazar Salazar**
                                              Assistant United States Attorney