Case 7:20-cv-00025 Document 22 Filed on 05/11/20 in TXSD Page 1 of 6

United States District Court
Southern District of Texas
**ENTERED**
May 11, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| VS. § | CIVIL ACTION NO. 7:20-CV-00025 |
| § | |
| HIDALGO AND CAMERON COUNTIES § | |
| WATER CONTROL AND § | |
| IMPROVEMENT DISTRICT NO. 9, *et al*, § | |
| § | |
| Defendants. § | |

### ORDER GRANTING PLAINTIFF'S OPPOSED MOTION FOR ORDER FOR IMMEDIATE POSSESSION AND DENYING AS MOOT PLAINTIFF'S EMERGENCY MOTION

On January 27, 2020, Plaintiff United States of America ("Plaintiff") filed a Complaint and Declaration of Taking (Dkt. Nos. 1–2) with this Court in the above-referenced action.[1] On April 15, 2020, Plaintiff filed its Opposed Motion for Order for Immediate Possession (Dkt. No. 19). Defendant Hidalgo and Cameron Counties Water Control and Improvement District No. 9 ("Defendant") filed a response in opposition to this Motion (Dkt. No. 20) on May 6, 2020. On May 8, 2020, Plaintiff filed an emergency motion seeking expedited adjudication of its pending Motion for Order for Immediate Possession (Dkt. No. 21).

In its Motion for Order for Immediate Possession (Dkt. No. 19), Plaintiff seeks the surrender from Defendant of the estate defined as:

> [A] fee simple [estate], subject to existing easements for public roads and highways, public utilities, railroads, and pipelines; and subject to all interest in minerals and appurtenant rights for exploration, development, production and removal of said minerals
> Reserving to the owners of the lands identified in the Quitclaim Deed, Volume 697, Page 180, Deed Records of Cameron County, Texas; Deed Volume

---

[1] On April 13, 2020, Plaintiff filed a First Amended Complaint and First Amendment to Declaration of Taking (Dkt. Nos. 16–17), which affected only the description of Tract RGV-WSL-8006.

314, Page 62 (Block 36, Lot 13; Block 35, Lots 4 & 5; Block 72, Lots 1 & 5–8), Deed Records of Hidalgo County, Texas; Map, Volume P, Page 227 (Lot 1, Block 73 and Lot 8, Block 73) and Volume 7, Page 14 (Lot 6), Map Records of Hidalgo County, Texas; Warranty Deed, Volume 444, Page 609, Deed Records Hidalgo County, Texas, reasonable access to and from the owners' lands lying between the Rio Grande River and the border barrier through opening(s) or gate(s) in the border barrier between the westernmost mark labeled "Beginning" and easternmost mark labeled "Ending" depicted on the map below; Excepting and excluding all interests in water rights and water distribution and drainage systems, if any, provided that any surface rights arising from such water rights or systems are subordinated to the United States' construction, operation and maintenance of the border barrier.

Dkt. No. 17, Ex. 1 at Schedule EE. The estate being claimed in fee simple contains specific tracts of land described with more certainty in Schedules C and D of the Declaration of Taking (Dkt. No. 2, Ex. 1, describing Tracts RGV-WSL-8000, RGV-WSL-8000-2, RGV-WSL-8006, and RGV-WSL-8007) and in Schedules CC-2 and DD-2 of the First Amendment to Declaration of Taking (Dkt. No. 17, Ex. 1, amending the description of Tract RGV-WSL-8006 only).

On January 27, 2020, Plaintiff filed a Complaint in the above-referenced action, for the condemnation (taking) of Defendant's property in fee simple, and Declaration of Taking of those properties in accordance with 40 U.S.C. § 3114 (Dkt. Nos. 1–2).[2] On January 28, 2020, Plaintiff deposited into the Registry of this Court the sum of $314,005.00 as the estimated just compensation for the taking described above (Dkt. No. 5).

Plaintiff asserts that these actions have given it title to the subject property. Dkt. No. 19. Defendant contends Plaintiff should not be granted possession because Plaintiff failed to sufficiently plan for the construction of the border fence and its potential impact on Defendant's operations. Dkt. No. 20 at ¶¶ 9–16.

---

[2] As previously noted, Plaintiff subsequently amended its description of the taking with respect to Tract RGV-WSL-8006 only by filing its First Amended Complaint and First Amendment to Declaration of Taking (Dkt. Nos. 16–17).

Defendant is "a limited purpose district established pursuant to the Texas Water Code." *Id.* at ¶ 4. Defendant provides water to citizens in a number of towns in the Rio Grande Valley "in part by pumping water directly from the Rio Grande River at locations along the U.S.-Mexico Border." *Id.* at ¶¶ 4–5. The subject property "includes levees and other infrastructure necessary to carry out [Defendant's] purposes, and it immediately abuts an 800-acre reservoir that holds approximately 2.6 billion gallons of water that is ultimately delivered to [Defendant's] end users." *Id.* at ¶ 6.

Defendant asserts that Plaintiff has failed to communicate to Defendant how Plaintiff intends to use the subject property and what effect that use may have on Defendant's abilities to perform its duties. *Id.* at ¶ 7. Defendant repeatedly raises the purported issue that Plaintiff does not yet have final construction plans for the border fence. Dkt. No. 20 at ¶¶ 7, 12.

Defendant raises a few specific concerns. Defendant asserts that Plaintiff has not properly considered "the integrity of the levees that maintain the reservoir and their susceptibility to hydrostatic pressure from the reservoir towards the Rio Grande River." *Id.* at ¶ 13. Defendant also contends Plaintiff "has failed to adequately design the crossing it proposes to construct over the channel inlet that connects the Rio Grande River to [Defendant's] reservoir, nor has [Plaintiff] adequately considered the effect on flow that the bridge will have on the reservoir/levee system." *Id.* Defendant concludes its list of concerns by stating, "[t]he reason that commencing construction without complete engineering plans poses such a danger is due to the fact that the reservoir constantly seeps through the levee." *Id*. at ¶ 14 (noting that this seepage could cause a failure of the levee or unstable ground near, or under, the border fence).

These concerns have been raised to, and considered by, Plaintiff during the parties' negotiations, which took place prior to the filing of this condemnation action. *See* Dkt. No. 13 (Joint Discovery/Case Management Plan). Defendant first raised concerns regarding possible seepage issues around June 14, 2019. *Id.* at 4. On August 7, 2019, Defendant "raised concerns with the hydrology and the capabilities of the border wall to withstand pressure from Defendant's basin." *Id.* at 5. Between August 8 and August 15, 2019, Plaintiff's representatives responded to Defendant's question regarding how the proposed border fence would withstand the pressure of Defendant's retention basin. *Id.* The parties again met on August 21, 2019, and discussed "the wall design, the canal bridge design, and dredging operations." *Id.* In that meeting, Plaintiff "addressed issues regarding the weeping of the basins and the wall design's ability to withstand the weeping; addressed issues regarding seepage and stability analysis; [and] addressed dredging capabilities regarding the bridge [U.S. Customs and Border Protection] intends to construct within the tracts." *Id.* Plaintiff also addressed Defendant's concerns at the parties' meeting on October 22, 2019. Dkt. No. 13 at 6. Therefore, Plaintiff has engaged with Defendant regarding Defendant's concerns raised in opposition to Plaintiff's Motion (Dkt. No. 19).

Furthermore, Plaintiff and Defendant executed a maintenance memorandum of agreement ("MOA") on April 8, 2020. Dkt. No. 19 at ¶ 10. The MOA is binding on all parties involved and prescribes "each party's maintenance responsibilities and obligations within the Subject Property." *Id.* at ¶ 9 (citing Dkt. No. 13 at 4–7). The MOA protects Defendant's right to access the subject property and the surrounding area for purposes of maintaining and operating Defendant's water reservoir. *Id.*

Additionally, Plaintiff has shared with Defendant 65% design plans and has committed to sharing its 100% design plans as soon as they are completed. *Id.* at ¶ 11; Dkt. No. 13 at 5. Plaintiff has also represented to the Court its commitment to continuing to deal with Defendant in good faith even after Plaintiff is granted possession. *See* Dkt. No. 19 at ¶ 11.

The Court acknowledges its authority to "fix the time within which, and the terms on which, the parties in possession shall be required to surrender possession to the petitioner . . . ." 40 U.S.C. § 3114(d)(1). However, the Court finds that Defendant has not presented any undue hardship that warrants a delay in granting Plaintiff possession.[3] *See E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 825 (4th Cir. 2004) ("Although the district court fixes the time and any terms of possession, the government takes possession of the condemned property as a matter of course, unless the landowner or occupant demonstrates some undue hardship that warrants a delay.")

The Court finds Plaintiff complied with the Declaration of Taking Act, 40 U.S.C. § 3114. Accordingly, the Court hereby **GRANTS** Plaintiff's Opposed Motion for Order for Immediate Possession (Dkt. No. 19).[4]

Thus, this Court **ORDERS** that all Defendants to the above-referenced action and all persons who own or claim ownership, possession, and/or control of the property described in the Complaint (Dkt. No. 1) and First Amended Complaint (Dkt. No. 16)

---

[3] The Court notes that Defendant attacks the Declaration of Loren Flossman (Dkt. No. 19, Ex. 1), evidence Plaintiff submitted in support of its Motion. Defendant contends that Mr. Flossman's failure to assert that Plaintiff is prepared to take possession of the subject property is a tacit admission that Plaintiff is not prepared to do so. Dkt. No. 20 at ¶ 15. However, Mr. Flossman's declaration is directed more at Plaintiff's assertion of urgency rather than its level of preparedness. *See* Dkt. No. 19, Ex. 1. Defendant also contends Mr. Flossman does not provide any evidence to support his assertion that Plaintiff will incur significant monetary damages if possession is delayed. Dkt. No. 20 at ¶ 16. Assuming but not deciding that Defendant's contention is correct, the Court notes that Plaintiff provided more specificity regarding its allegations of impending monetary damages in its Opposed Emergency Motion. *See* Dkt. No. 21.

[4] Therefore, the Court **DENIES AS MOOT** Plaintiff's Opposed Emergency Motion (Dkt. No. 21).

(affecting the description of Tract RGV-WSL-8006 only) filed herein shall surrender possession of said property, to the extent of the estate being condemned, to Plaintiff immediately.[5] The Court reserves Defendant's right to litigate any questions concerning title and/or the amount of just compensation to be paid at a later date.

It is further **ORDERED** that a notice of this order shall be served on all persons in possession or control of the said property forthwith.

SO ORDERED this 11th day of May, 2020, at McAllen, Texas.

Randy Crane
United States District Judge

---

[5] The Court notes Defendant's ability to file an emergency motion should an issue arise. *See* Judge Crane's Court Procedures at Rule IV (Emergency Relief), available at https://www.txs.uscourts.gov/page/judge-cranes-court-procedures#4. Additionally, the Court can schedule a status conference at which both parties would be required to give an update to the Court and during which Defendant would be able to bring any issues to the Court's attention. Should Defendant wish to have such a status conference scheduled, it may submit a motion to the Court requesting such conference.